# Supreme Court Decisions.

## ILLUMINATING GAS FURNISHED BY A NATURAL GAS COMPANY.

THE CIRCLEVILLE LIGHT & POWER CO. v. THE BUCKEYE GAS CO. ET AL.

69 Ohio State—Decided, December 8, 1903.

*Artificial Gas Company—Contract with Municipality Expires—Can Not Enjoin a Natural Gas Company from Supplying City with Illuminating Gas, When—Section 3551, Revised Statutes—Municipal Law —Injunction.*

1. An artificial gas company, whose contract with the municipal authorities of a city or village, for the furnishing of gas for illuminating purposes to the corporation and its inhabitants, has expired by the lapse of time, is not entitled to an injunction against a natural gas company furnishing natural gas to said corporation and its inhabitants for the same purpose.

2. A natural gas company having a right by franchise to furnish natural gas for fuel may go into operation in a city or village, under contract with the municipal authorities thereof, for the furnishing of natural gas for illuminating purposes, to the municipality and its inhabitants, although there is already formed within such municipality, a company which manufactures and furnishes artificial gas for the same purpose, and the right to so go into operation does not require a vote of the qualified voters of the municipality, as provided in Section 3551, Revised Statutes.

Error to the Circuit Court of Pickaway County.

On October 4, 1901, the plaintiff in error filed its petition in the lower court, against the defendants in error, The Buckeye Gas Co., and its general manager and secretary, asking an injunction to prevent them from furnishing, for a money consideration, to the city of Circleville and its inhabitants natural gas for *lighting* purposes, and also to prevent them from inducing the plaintiff's customers to use natural gas for said purpose.

791

The plaintiff claims the exclusive right to supply the city and its inhabitants with manufactured or artificial gas for illuminating purposes, under an ordinance of said city, passed August 12, 1891. The plaintiff is the successor of The Circleville Gas Light & Coke Co., which in 1859 obtained a franchise for using the streets and other public ways in laying pipes to convey gas for lighting said city, and thereunder erected its gas works and established its plant. The franchise was renewed and extended September 2, 1891, and a contract was entered into between the city and the gas light and coke company for the furnishing of gas for lighting purposes for the term of five years, or until March 2, 1896. The price for gas agreed upon in the latter franchise is $1.50 per 1,000 cubic feet for light for all amounts less than 10,000 cubic feet per month; and for all amounts greater than 10,000 cubic feet per month shall make a lower rate. Gas for heat and power shall be furnished at $1.00 per 1,000 cubic feet per month.

On or about September 2, 1891, the plaintiff, The Circleville Light & Power Co., obtained from said city a franchise to erect posts and wires for the purpose of furnishing electricity for light, heat and power to the city and its inhabitants; and on the same day, by ordinance, obtained the right to use the streets, alleys and public grounds for such pipes as might be necessary to convey gas to the city and its inhabitants.

On or about September 14, 1891, the plaintiff in error, plaintiff below, purchased of the said The Circleville Gas Light & Coke Co. its gas works, plant, pipes, and all its property, franchises, rights and privileges, and, as the petition alleges, became the successor of and succeeded to all its franchises, property, rights and privileges.

The petition proceeds to aver that the ''plaintiff thereupon undertook to perform and has performed and carried out the said contract, duties and obligations of said The Circleville Gas Light & Coke Co., and since the expiration of the term fixed by said ordinance of August 12, 1891, within which the said The Circleville Gas Light & Coke Co. was to furnish gas at the prices therein named, the said plaintiff has, in good faith, continued and is continuing to furnish gas to the said city and its inhabitants, and said city and its inhabitants have continued and are continuing to receive gas so furnished by plaintiff, under

and for the price named and fixed by said ordinance of August 12, 1891, and said plaintiff intends to so furnish gas to said city and its inhabitants at said price fixed by said ordinance of August 12, 1891, until said city shall again fix said price or some other reasonable price for another term to be accepted by said plaintiff.''

It is also alleged that plaintiff accepted the terms of the aforesaid electric lighting ordinance passed September 2, 1891, and constructed and has maintained a large electric light and power plant at great expense, and is furnishing electric light under said ordinance to said city and its inhabitants.

The plaintiff complains of the defendant in error, The Buckeye Gas Co., a corporation under Ohio laws since December 31, 1894, in this: That on or about March 20, 1895, the said city, by ordinance, gave the defendant the right and privilege to use the streets, commons, alleys, avenues, sidewalks, public grounds and bridges, for the purpose of laying and maintaining pipes to be used for carrying natural gas for public and private use for *fuel* in buildings, manufacturing establishments, ''and otherwise,'' in the city, together with the right to lay pipes and erect necessary regulators and appliances required to convey said gas to consumers thereof in the city. Section 2 of this ordinance provides that—

''The Buckeye Gas Co., defendant, shall, for a period of ten years from August 1, 1895, be entitled to charge for such natural gas furnished to the citizens and public buildings not to exceed the sum of twenty-five cents per 1,000 cubic feet net, to consumers, and fixes the rental of meters, and that the mayor's office, city prison, council chambers, city engine house, memorial hall and public library building shall be supplied without charge.''

It is further complained that while the plaintiff has the exclusive right to furnish gas and electric light to said city and its inhabitants for illuminating purposes, the defendant has wrongfully and without authority begun to furnish and is still so furnishing natural gas to the city and its inhabitants for illuminating purposes, and is advising and inducing the city and its inhabitants to use said natural gas for illuminating purposes, in violation of the rights of the plaintiff under its franchises, and without complying with the provisions of Section 3551, Revised Statutes.

To the petition containing the foregoing and other averments the defendant demurred. The court overruled the demurrer, and the defendant answered, setting up its right to furnish natural gas for illuminating purposes, and contesting the right of plaintiff to an injunction. The plaintiff replied, and on the issues joined the cause was heard by the court. The court found for the defendant and dismissed the petition. The plaintiff appealed to the circuit court, where the answer and reply were withdrawn, and a demurrer filed to the petition, which the circuit court sustained. No amendment being desired, the petition was dismissed.

Error is prosecuted in this court to reverse the judgment of the circuit court.

*DeWitt & Hubbard* and *Percy A. Walling*, for plaintiff in error.

*Lawrence T. Neal*, for defendant in error.

PRICE, J.; BURKET, C. J., SPEAR, DAVIS, SHAUCK and CREW, JJ., concur.

The plaintiff in error claims the exclusive right to furnish the city of Circleville and its inhabitants with gas for illuminating purposes, and pleads an ordinance passed by the council of said city, and the plaintiff's acceptance thereof, as the contract upon which it rests its claim. The ordinance was passed on August 12, 1891, and was to be in force as a contract until March 2, 1896.

It also pleads, for some purpose no doubt, that by another ordinance passed about the same time, it obtained the right and privilege of furnishing the said city and its inhabitants with electric light, for public and private buildings, the streets and other public ways. The petition is silent as to the price to be charged for such light, and also as to the duration of the contract.

But it is plainly disclosed in the petition that its contract with the city for the furnishing of gas is the accepted ordinance of August 12, 1891, which fixed the charges for light at $1.50 per 1,000 cubic feet per month, for all amounts less than 10,000 cubic feet; and for heat and power at $1.00 per 1,000 cubic feet per month. It is expressly provided in this ordinance so plead

that its obligation extends to March 2, 1896. The second section provides—

"That upon the filing by the said gas company in the office of the clerk of the corporation of its written acceptance of the terms of this ordiance within ten days of the taking effect of this ordinance, the same shall then be and become a binding contract between the said gas company and the said city for the period aforesaid, and said company shall not be required to furnish gas at a less price during said period of time so agreed upon."

It seems, therefore, that while the plaintiff had a franchise ordinance authorizing it to use the streets and other public ways and places, for the laying and maintaining pipes for the purpose of supplying the city and its inhabitants with gas for light and heat, the contract as to the terms upon which it could operate the plant and furnish the gas expired on March 2, 1896, over five years prior to the filing of plaintiff's petition in this case.

As found in the statement of the case, the petition discloses this fact, but it alleges that the plaintiff company complied with the terms of said ordinance during the term prescribed, and has ever since continued to furnish gas according to the same charges, and that the city and its inhabitants have continued to use and pay for the gas according to the terms of said ordinance.

There has been no renewal or extension of the ordinance of August 12, 1891, in the manner and under the form prescribed by law, or at all, and while the city and the citizens may be liable to pay for what it receives from the plaintiff, its right to enjoin another company from furnishing even the same kind of gas is a very different question. To entitle it to this extraordinary remedy, the standing of the plaintiff should be unequivocal, and disclose vested rights of contract about to be invaded to its special injury, and upon which it can appeal to a court of equity for protection.

Under what obligation is either the city or its inhabitants to continue taking and paying for plaintiff's gas? May not either cease to patronize the plaintiff at the end of any month? And if there is not a continuing obligation or contract between the parties, why may not some other company or person solicit the former customers of the plaintiff and furnish them with gas

for illuminating purposes? Will a court of equity forbid it? The plaintiff has no contract with the city. Its rights are, at best, but transitory, and yet it seeks a perpetual injunction against the defendant to exclude it from lighting the city. These are threshold questions and closely involve the plaintiff's standing in court.

The demurrer challenges the petition in which the foregoing facts clearly appear, and where is the subsisting contract with the plaintiff that should be protected by the provisions of Section 3551, Revised Statutes? There is none, and the plaintiff in error fails to show a right to the relief prayed for.

We now come to the controversy presented in the briefs. The plaintiff furnishes manufactured gas, and the defendant company, obtained, by ordinance duly accepted, the right to pipe streets and other public ways of the city of Circleville for the purpose of supplying natural gas for fuel, to the city and its inhabitants. This ordinance was passed on March 20, 1895, and the term of its operation is fixed at ten years from the taking effect of the ordinance. In addition to furnishing natural gas for fuel, it is alleged that the defendant is furnishing that gas for illuminating purposes to the city and its inhabitants, without having obtained the right to do so by a vote of the qualified voters of the city as required by Section 3551, Revised Statutes. That section provides:

"The municipal authority of any city or village, or the trustees of any township, in which any gas or water company is organized, may contract with any such company for lighting or supplying with water the streets, lands, lanes, squares, and public places in such city, village, town, or township; but no such company shall go into operation in any city or village where such a corporation has been already formed, or is hereafter formed, until after the question of authorizing such operation has been submitted to the qualified voters of such city or village, and authorized by ordinance."

It is alleged that defendant company did not obtain the right to go into operation for furnishing natural gas for lighting purposes by a vote of the people, and therefore its proceedings in that respect are in violation of the above statute, because there is an established existing company—the plaintiff—already formed in the city, for the purpose of supplying it and its people with gas lighting.

Does the word *"gas"* as used in the section, embrace natural gas? Or, does it mean the artificial or manufactured gas which alone was then in use for illuminating purposes? The plaintiff asserts that the word, as there used, is *generic*, and not confined to any species of gas, but includes *any* "gas." Therefore it maintains that a natural gas company can not go into operation as a competitor with plaintiff without being authorized by a vote of the citizens. On the contrary, the defendant contends that the Legislature, when it made the provision involved, had in mind and intent the "gas" which was then known and in commercial use.

The original section, as found in Swan & Critchfield's Statutes, Vol. 1, p. 300, Sec. 54, contained no provision requiring a vote of the people to authorize a second gas or water company to go into operation. The section was amended April 18, 1874, and the present restriction was thereby made (see Ohio Laws, Vol. 71, p. 93). The original section was adopted more than a half century ago when natural gas for commercial use was unknown in this state. As a matter of common knowledge it was not known as an article of commercial use in Ohio when the above amendment was adopted in 1874, and could not have been in contemplation when the legislation now found in Section 3551, Revised Statutes, was enacted. The existing subject matter of a statute is as important and proper in its construction as it is in construing contracts between parties.

This view is strengthened by reference to Section 2491, Revised Statutes, as found in the revision of 1880. It is there provided that "a municipal corporation in which any incorporated gas company is properly organized under the laws of the state, shall have power to contract with such company—a gas company—for supplying with gas the streets, squares, and other public places in the corporate limits; but this section shall be subject to the proviso in section *seventy*-five hundred and fifty-one" (3551). Examination demonstrates that in making the revision the word *seventy* is a clerical mistake, and that *thirty*-five hundred and fifty-one was clearly intended.

In the year 1887, after the discovery and production of natural gas for commercial purposes within this state, our Legislature amended Section 2491, so that it read:

"A municipal corporation may contract with such company for supplying with *natural* or artificial gas for the purpose of

lighting or heating the streets, squares and other public places and buildings in the corporate limits; but this section shall be subject to the restrictions in the last clause of section thirty-five hundred and fifty-one.''

In 1889 the section was again amended to include electric light companies. Hence we think that "gas" as mentioned in Section 3551, means artificial and not natural gas, and that the defendant being a *natural* gas company may go into operation as against the contract of the plaintiff, without being authorized to do so by a vote of the people. The rule would be otherwise if the plaintiff were a natural gas company, the purpose being to restrain a second company from going into operation in the use of the same kind of gas that is being used by an already established company, without obtaining popular consent. We find a well considered case on that subject in *Warren Gas Light Co.* v. *Pennsylvania Gas Co. et al*, 161 Pa. St., 510, where the court held the following proposition:

"A company organized under the special act of March 8, 1869, P. L. of 1872, 1217, with the exclusive right to furnish manufactured gas for light to the citizens of Warren by the terms of its charter, has no exclusive right as against a corporation delivering natural gas to the citizens of Warren for illuminating or lighting purposes, under the act of May 29, 1885, P. L., 29."

The question we are considering is fully discussed in that case.

While the word "gas" may be in one sense a *generic* term, it is quite plain, that as used in the statute, it does not embrace every species of gas discovered or manufactured in modern times. There are numerous gases, manufactured or generated, which are used in art and manufacturing, none of which was contemplated in the enactment of Section 3551. The manufactured gas then in use and now furnished by the plaintiff is a substance produced by human skill and art. Natural gas comes from the great laboratory of nature, all ready for the immediate use of man when let to the surface of the earth.

If we were in doubt about our construction of Section 3551, there is another rule or canon of construction which may well be employed here. The plaintiff claims the exclusive right to furnish gas for lighting the city and its people. In other phrase, it claims a monopoly in supplying that article unless it shall be

qualified by a vote of the people. This may be true as to supplying manufactured gas if it has a subsisting contract for that purpose. But we think not so as to natural gas. If there is doubt about the extent of plaintiff's monopoly, it must be resolved against the monopoly.

As said by Justice Gordon in the case of the *Appeal of the Scranton Electric Light & Heating Co.,* 122 Pa. St., 154:

"Monopolies operate in restraint of competition and are detrimental to the public welfare, and are not to be allowed at all except where the resultant advantage is in favor of the public. Public grants are to be so strictly construed as to operate as a surrender by them of the sovereignty no further than expressly declared by the language employed. The grantee takes nothing by inference and except so far as the exclusive privilege can be found from the grant itself, it is not conferred."

The doctrine is tersely stated by Justice Brewer in *Omaha Horse Ry. Co.* v. *Cable Tramway Co.,* 30 Fed. Rep., 324-328, as follows:

"He who says that the state has given him a franchise, a right to do that which without that franchise he could not do, will be compelled to show that the franchise, the right claimed, is within the terms of his grant. Much more strenuous must be the demand upon him for clear and explicit language in his grant when he claims that a part of it is not merely the franchise, the right to do, but also the right to exclude all others of the public from exercising the same right, and the state, as the representative of the public, from according the same right to another."

For other authorities on the subject see cases cited by Justice Brewer in his opinion.

Here we have the plaintiff holding a contract by ordinance which seems to be in full force, whereby it is authorized to furnish electric light to the city of Circleville and its citizens; and by its side, and on which the plaintiff stands, is an expired contract for furnishing manufactured gas to the same takers for the same purpose.

It can not complain of the lighting by electricity, because that is its own enterprise. Nor can it complain that the furnishing of natural gas for lighting trespasses upon the plaintiff's right to furnish electric light, because that is not within the provision in Section 3551.

The asserted monopoly of furnishing gas, manufactured gas, for illuminating purposes, is at a price fixed by the expired contract, while the price charged by the defendant for light by natural gas is much cheaper to the city and its people. The people are not complaining of defendant's operations, for they are greatly benefitted and relieved by them, and in their interest, the exclusive privilege of plaintiff must be denied.

It is our opinion that the demurrer was properly sustained by the circuit court, and its judgment is affirmed.

*Judgment affirmed.*